IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAKISHA HENRY, | : | CIVIL ACTION |
|     *Plaintiff*, | : | No. 24-1891 |
| v. | : | |
| | : | |
| EDRAS MARCELIN & | : | |
| LYFT, INC., | : | |
|     *Defendants.* | : | |

**MEMORANDUM**

**JOSÉ RAÚL ARTEAGA**                                                                     September 25, 2024
**United States Magistrate Judge[1]**

Plaintiff Lakisha Henry was injured when she was a passenger in a motor vehicle collision involving a vehicle driven by Defendant Esdras Marcelin—a Lyft driver—on October 5, 2023. She asserts claims against Marcelin for negligence (Count I) and Defendant Lyft, Inc., for negligent hiring, retention, training, supervision, and entrustment (Count II) and for respondeat superior liability (Count III). (*See* Compl., ECF 1, Ex. A.) Lyft moves for partial judgment on the pleadings with respect to Count II. (ECF 29.) For the reasons that follow, the Court grants its motion.

**I.    BACKGROUND**

Henry alleges she was riding in a vehicle traveling southbound on 65th Street near its intersection with Buist Street in Philadelphia, Pennsylvania. (ECF 1, Ex. A., at ¶ 4.)

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 22, 24.)

Marcelin was driving another vehicle which "was owned, rented, leased, and/or otherwise under the control of and entrusted to Marcelin by Lyft, Inc." (*Id*. at ¶ 5.) Marcelin's vehicle collided with another vehicle at the intersection of Buist and 65th, causing the other vehicle to strike the vehicle in which Henry was a passenger. (*Id*. at ¶¶ 5-7.) Henry alleges that Marcelin was Lyft's agent during the accident; and thus, the accident occurred "in the course and scope of [Marcelin's] agency and/or employment" for Lyft. (*Id.* at ¶¶ 8-9.)

Henry contends that she suffered "various serious and/or permanent personal injuries and/or aggravation of pre-existing conditions and other ills and injuries" as a result of the collision. *(Id*. at ¶¶ 24-25.) She also avers that she suffered emotional injuries and damage to her own personal property. (*Id*. at ¶¶ 26-27.)

Seeking compensatory damages and other costs in excess of $75,000, Henry initiated suit against both defendants in the Philadelphia County Court of Common Pleas. On May 3, 2024, Marcelin removed Henry's suit to this Court based on diversity jurisdiction. (ECF 1 at 4.) Believing Lyft had not filed an answer to Henry's Complaint within the time required, Henry requested the entry of a default against it. (*See* ECF 17.) Judge Mark A. Kearney subsequently held an initial pretrial conference during which he "confirmed there [wa]s *no default in appearance* by Lyft, Inc.," so the Clerk's Office never entered a default under Federal Rule of Civil Procedure 55(a). (ECF 21 at 1 (emphasis added).)

According to Henry, after private negotiations, she agreed to lift the default (which was never entered) if Lyft promised to file an answer and not file a motion to dismiss as

to any issue. (ECF 35-1 at 3.) Lyft's counsel agreed that it would "file and answer within 30 days in lieu of any motion to dismiss." (*Id.*) Judge Kearney granted Lyft "leave to file an Answer by no later than June 12, 2024" and the parties consented to the jurisdiction of a Magistrate Judge on June 7, 2024. (ECF 21 at 1.) Lyft filed its Answer to Henry's complaint shortly thereafter. (ECF 26.)

On July 16, 2024, Lyft moved for partial judgment on the pleadings, arguing that Count II of Henry's Complaint fails to state a claim upon which relief can be granted. (ECF 29 at 1.) In response, Henry argues: (1) Lyft's motion for judgment on the pleadings is identical to a motion to dismiss, and thus, it would be unfair to grant it, and (2) even if the Court considers the Motion on its merits, Henry's Complaint alleges sufficient facts to state a claim. (ECF 35.) In reply, Lyft argues that its Motion for Judgment on the Pleadings is different from a motion to dismiss because it requires the Court to evaluate Henry's claims in the context all of the pleadings and not just the sufficiency of the Henry's Complaint. (*See* ECF 33 at 5.)

## II.  LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Rule 12(h)(2) provides that a defense of failure to state a claim upon which relief can be granted may . . . be made by a motion for judgment on the pleadings," in which case the Court applies "the same standards as under Rule 12(b)(6)." *Turbe v. Govt. of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

Thus, as with a Rule 12(b)(6) motion, the Court "must accept the [C]omplaint's allegations as true and draw all reasonable inferences in favor of" Henry. *Gross v. German Found. Indus. Initiative*, 549 F.3d 605, 610 (3d Cir. 2008) (citation omitted). To defeat Lyft's motion, Henry's Complaint must provide factual allegations that are "enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It need not contain "detailed factual allegations," but "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The plausibility standard requires more than a "sheer possibility that [Lyft] has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

To determine whether Henry's Complaint plausibly gives rise to an entitlement to relief the Court: (1) takes "note of the elements a plaintiff must plead to state a claim;" (2) identifies the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) assumes "[the] veracity [of well-pleaded factual allegations]." *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (citation and internal quotation omitted).

### III. DISCUSSION

In Count II, Henry alleges that Lyft is liable for her injuries because it negligently hired, trained, retained, or supervised Marcelin when the accident occurred. Henry also

4

alleges that Lyft is liable for her injuries because it negligently entrusted Marcelin with the vehicle. The Court takes note of the elements for these claims and analyzes Lyft's 12(c) motion for each.

### A. Henry's Fairness Argument Does Not Require the Court to Deny Lyft's Motion for Judgment on the Pleadings.

To begin, Henry argues the Court should not consider Lyft's Motion because it is "simply a Motion to Dismiss by any other name" and Lyft agreed not to move to dismiss her Complaint. (ECF 35 at 4.) She argues its "sleight of hand must not be rewarded" because "such practices are likely to overburden the courts with needless motions . . . ." (*Id.*) However, her fairness argument does not require the Court to allow Count II to proceed to discovery without considering Lyft's Motion on its merits.

Henry does not cite to any case or other law that requires the Court to dismiss Lyft's Motion without considering whether judgment on the pleadings is appropriate with respect to Count II. Although she requested a default, no default was actually entered against Lyft. (*See* ECF 17 and 18.) After holding a telephonic Initial Pretrial Conference, Judge Kearney entered his Order confirming that Lyft was never in default. (*See* ECF 21 at 1.) So, when the parties negotiated about whether Henry would agree to lift the "default," there was actually nothing to negotiate about.

Moreover, Henry never asked Lyft to agree to refrain from filing a motion for judgment on the pleadings. As Lyft's reply correctly notes, the Federal Rules of Civil Procedure include separate provisions for motions to dismiss and motion for judgment on the pleadings. *See* Fed. R. Civ. P. 12(b)–(c). Lyft never agreed not to file a motion under Rule 12(c), which permits the Court to consider not only the Complaint, but also, *inter*

5

*alia*, any answers, replies, and counterclaims. *See* Fed. R. Civ. P. 7(a)-(c). In the correspondence Henry attaches to her response, Lyft agreed only that it would not file a motion to dismiss, *i.e.*, a motion under Rule 12(b). (ECF 35-1 at ECF p. 3.) It did precisely that.

### B. Negligent Hiring, Retention, and Supervision

For Henry's negligent hiring, training, retention, or supervision claim to proceed under Pennsylvania law, her "[C]omplaint must allege specific facts tending to show: (1) [Marcelin] demonstrated a propensity for misconduct or ill fitness for the position and, (2) nevertheless, [Lyft] chose to hire, failed to train, declined to terminate, or failed to adequately supervise [Marcelin], putting [Henry] in danger." *Fusco v. Uber Techs., Inc.*, No. 17-36, 2018 WL 3618232, at *4 (E.D. Pa. 2018) (citations omitted). Negligent hiring, negligent retention, and negligent supervision all have different elements that Henry must plausibly allege to proceed.

To make out a claim for negligent hiring, she must show that Lyft, knowing or on notice of Marcelin's propensity for misconduct, nevertheless hired him and so exposed Henry to danger. *See Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 39-40 (Pa. Super. Ct. 2000) (citing Restatement (Second) of Torts, § 317 (1965)). A negligent retention claim is similar but requires Henry to show that Lyft negligently declined to terminate Marcelin after learning of a dangerous tendency. *See Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 420 (Pa. 1968) (citing Restatement (Second) of Torts, § 317 (1965)). To make out a claim for negligent supervision, Henry must show that Lyft knew or should have known of a need to supervise Marcelin, and that, by failing to do so, exposed Henry to Marcelin's

misbehavior. *See R.A. ex rel. N.A. v. First Church of Christ*, 748 A.2d 692, 697 (Pa. Super. Ct. 2000) (citing Restatement (Second) of Torts, § 317 (1965)).

All these theories share the common requirement that Henry show that Marcelin's prior bad acts would have put a reasonable employer on notice of Marcelin's propensity to injure others. *See Heller v. Patwil Homes*, 713 A.2d 105, 108 (Pa. Super. Ct. 1998); *see also Dempsey*, 246 A.2d at 422 (stating the inquiry to be: "what was [the employee's] conduct prior to [the incident] and was it of such nature as to indicate a propensity for violence?"); *Gjeka v. Delaware Cnty. Cmty. Coll.*, No. 12-4548, 2013 WL 2257727, at *13 (E.D. Pa. 2013) (finding that because the "[p]laintiff . . . failed to plead any facts indicating that she . . . complained about [the employee's] actions to an appropriate administrator," she had "failed to plead facts satisfying the 'reasonably foreseeable' element of a negligent supervision claim"). A general allegation that Marcelin was dangerous does not meet this burden. *See Fusco*, 2018 WL 3618232, at *5 (holding that the plaintiff's complaint did not survive a Rule 12(b)(6) motion because it only "generally allege[d]" that the Uber driver who attacked him was "unqualifed and dangerous"). Similarly, a general allegation that Henry was in a sensitive position does not carry Henry's burden. *See id.* at *4.

Rather, Henry must allege specific examples of violent or dangerous behavior to survive Lyft's Motion. *See id.* at *5 (recognizing that federal courts routinely dismiss negligent hiring claims under Rule 12(b)(6), if the plaintiff fails to allege a specific instance of misconduct); *accord Doe A.F. v. Lyft, Inc.*, No. 23-3990, 2024 WL 3497886, at *4 (dismissing the plaintiff's negligent supervision claim against Lyft without prejudice because the plaintiff did not include past passenger complaints of sexual misconduct by

Lyft driver in her complaint); *Search v. Uber Techs., Inc.*, 128 F. Supp. 3d 222, 231 (D.D.C. 2015) (dismissing negligent hiring claim against Uber after the Uber driver stabbed the plaintiff passenger because no specific instance of the driver's past misconduct was alleged in her complaint). *Cf., Lockhart v. Willingboro High Sch.*, 170 F. Supp. 3d 722, 738 (D.N.J. 2015) (denying motion to dismiss the plaintiff's negligent hiring claim following a "student-on-student" sexual assault because the plaintiff alleged there was a "pattern of sexual assaults" or harassment when a teacher would leave the classroom).

Here, Henry broadly alleges that:

> [r]etaining and Permitting Defendant Esdras Marcelin to operate the [Motor Vehicle] when [Lyft] knew or, in the exercise of due care and diligence, should have known by and through his prior unsafe conduct, and/or substandard driving conduct during his tenure as agent/employee of Defendant Lyft, Inc. that Defendant [Marcelin] was incompetent and/or unfit to drive a motor vehicle, capable of committing and likely to commit actions and inactions like those set forth above that would harm the motoring public.

(ECF 1, Ex. A., ¶ 22(e).) Henry also alleges that Lyft failed: (1) to take proper and adequate measures to prevent Marcelin from endangering the motoring public; (2) to train Marcelin according to industry custom; and (3) to warn the public of Marcelin's negligent or careless operation of a motor vehicle. (*Id.* at ¶ 22.). Her allegations are only "[t]hreadbare recitals of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, that cannot "nudge" her claim for negligent hiring, retention, and supervision "across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570. Henry fails to identify any past misconduct that would put a reasonable employer on notice of an employee's propensity for dangerous activity. To the extent that Count II of

8

her Complaint rests on a claim for negligent hiring, training, retention, or supervision, Lyft's Motion is GRANTED.

### C. Negligent Entrustment

Dismissal is also warranted to the extent that Henry seeks to proceed with a negligent entrustment claim against Lyft. In Pennsylvania, Section 308 of the Restatement (Second) of Torts governs claims for negligent entrustment. *See Fakes v. Terry*, No. 15-1574, 2018 WL 1382513, at *5 (W.D. Pa. 2018) (citing *Knecht v. Balanescu*, No. 16-549, 2017 WL 4573796, at *7 (M.D. Pa. 2017)). It provides that:

> [i]t is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Restatement (Second) of Torts § 308.

To withstand Lyft's Motion, Henry must allege facts sufficient to show that Lyft "(1) permitted [Marcelin], (2) to operate its [automobile], and (3) that [Lyft] knew or should have known that [Marcelin] intended to or was likely to use the [automobile] in such a way that would harm another." *Fakes*, 2018 WL 1382513, at *5 (citing *Knecht*, 2017 WL 4573796, at *7). *Cf. Perez v. Bardo*, No. 11-376, 2011 WL 941380, at *3 (E.D. Pa. 2011) (denying a motion to dismiss where the plaintiff alleged that the trucking company defendant knew its driver lacked training or was not fit to drive).

Henry argues her allegations are akin to those found to be sufficient to withstand dismissal in *Youells v. Dzakpasu*, where a tractor-trailer driver struck an ambulance driver at a traffic intersection in icy conditions and the plaintiff ambulance driver suffered

9

severe physical injuries. No. 19-633, 2019 WL 3046300, at *1 (M.D. Pa. 2019). The ambulance driver sued the company that hired the truck driver under a negligent entrustment theory. *See id*. The plaintiff alleged that the trucking company: (1) failed to train its driver; (2) knew its driver was unqualified; (3) allowed its driver to operate the truck despite being unqualified; and (4) knew that allowing its driver to operate its vehicle was an unreasonable risk. *See id*. at *1-2. The court denied the trucking company's motion to dismiss because, in its view, the ambulance driver had pled sufficient facts to compel discovery. *See id*. at *8.

Plaintiff also compares her allegations to those which the court held were sufficient to put the defendants on "notice of the underlying factual allegations" in *McMahon v. Arsenberger*, No. 17-1242, 2018 WL 4855458, at *1 (E.D. Pa. 2018). There, a truck collided with the plaintiff's car. *See id.* The plaintiff alleged that the trucking company: (1) knew its driver was unqualified to operate the vehicle; (2) became aware of this fact during the driver's interview; (3) did not provide any safety training for the vehicle; and (4) still entrusted the driver with the tractor-trailer. *Id*. at *9. The court denied the defendant's motion to dismiss because the plaintiff alleged the company interviewed, hired, and trained the driver negligently, and failed to properly train the driver, so "a jury could find that Defendants were negligent in hiring and retaining [the driver] and entrusting him with Defendants' vehicle." *Id.*

The plaintiffs in *Youells* and *McMahon* both alleged that the trucking company defendants hired someone who they knew or should have known was not trained to operate commercial motor vehicles. In *Youells*, the Court held that the plaintiff had

10

alleged at least "25 different ways" the company negligently entrusted its vehicle to the driver. *Youells*, 2019 WL 3046300, at *1. In *McMahon*, the plaintiff supported her claim with allegations about a specific "interview" during which the company became aware of the driver's lack of qualification before deciding to hire him anyway. *McMahon*, 2018 WL 4855458, at *9. Allegations of hiring decisions made with knowledge that an individual does not possess the requisite training are sufficient to withstand dismissal because they imply that a company knowingly hired an unqualified employee to operate a company vehicle; thus, satisfying the elements of negligent entrustment.

Here, although Henry alleges in conclusory fashion that Lyft knew of Marcelin's prior unsafe conduct (*see* ECF 1, Ex. A, ¶ 22(e)), she does not specify any facts to support her claim; making her averment a "factual recitation of the elements" that does not suffice to state a plausible claim for relief. *See Twombly*, 550 U.S. at 555; *see also Brearey v. Ramashai*, 24-1693, 2024 WL 2848297, at *1 (E.D. Pa. 2024) (citing *id.*). Moreover, her remaining generalized allegations of Lyft's lack of investigation of Marcelin's record do not permit a reasonable inference that Lyft *knew* that Marcelin was unqualified. (*See* ECF 1, Ex. A, ¶ 22.) Instead, her allegations only permit an inference that Lyft did not know anything about Marcelin's qualifications because Lyft did not investigate him.

In arguing that her claim is like *Youells* and *McMahon*, Henry implicitly asks this Court to presume a generalized duty to investigate. The Court declines to presume that such a duty exists because, under Pennsylvania law, lessors—who are arguably similarly situated to Lyft—do not have a duty to investigate a lessee's driving records unless they affirmatively assume responsibility from their lessee. *See Gordon v. Robbins*, No. 23-2149,

2024 WL 4008756, at *5 (M.D. Pa. 2024); *see also Simpson v. Buchanan*, 20-2583, 2020 WL 4504444, at *3 (E.D. Pa. 2020) (dismissing a negligent entrustment claim in a motor vehicle accident because the plaintiff failed to specify anything about the defendant's prior conduct that would have put the lessor of the vehicle on notice of how the driver would operate the vehicle). Henry's complaint lacks any factual allegations that are sufficient to show that Lyft affirmatively assumed responsibility from Marcelin. Additionally, Henry cannot rely on *Youells* and *McMahon* without alleging specific facts supporting the knowledge element of her claim.

As a result, Lyft's Motion is granted to the extent that Count II of Henry's Complaint raises a claim for negligent entrustment.

## IV.   CONCLUSION

Because Henry's Complaint does not allege enough facts to state a plausible claim for relief against Lyft for negligent hiring, retention, training, or supervision or for negligent entrustment, its Motion is GRANTED and Count II is DISMISSED. Because the Court cannot say that amendment would be futile or inequitable, Count II is DISMISSED WITHOUT PREJUDICE with leave to amend if Henry can allege sufficient facts to state a claim.[2] An appropriate Order follows.

---

[2] The court should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]here certainly is no categorical rule that judgment on the pleadings is per se with prejudice." *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 501 (E.D. Pa. 2014). "[W]hen a complaint is vulnerable to dismissal on the pleadings, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation and internal quotation omitted). "This is true even where the plaintiff's failure to state a claim is raised in a defendant's Rule 12(c) motion." *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813, 824 (E.D. Pa. 2017).